FILED
NOV 3 0 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| DANIEL HEENAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05cv958 (RJL) |
| | ) | |
| OFFICER SUZANNE LEO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(November 29, 2007)[#20]

Daniel Heenan ("plaintiff") has sued the Metropolitan Police Department ("MPD") and MPD Officers Suzanne Leo, Willie Lawrence, and Eduardo Ashby, alleging, *inter alia*, that the defendants violated his First Amendment, due process, and equal protection rights. Plaintiff has also brought claims of assault, battery, and intentional infliction of emotional distress against Officer Ashby. Currently before the Court are the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motion will be GRANTED in part and DENIED in part.

**I. BACKGROUND**

Plaintiff is a self-described "sidewalk counselor" who engaged in weekly prayer and "counseling" activities outside of the Planned Parenthood of Metropolitan Washington (PPMW) facility in 2004 and 2005. Amend. Compl. ¶ 10-13, 16. Heenan alleges that on May 1, 2004, he was "counseling" outside of the PPMW facility when he



was assaulted by Harry James, a PPMW security guard. *Id.* ¶ 31. According to Heenan, the defendant officers witnessed the assault but refused to take action against Mr. James. *Id.* ¶ 31-34. Instead, the MPD officers ordered him to remain at least twenty feet away from the facility.[1] *Id.* ¶ 35.

Two weeks later, on May 15, 2004, Heenan alleges that he was again protesting in front of the PPMW facility when Officer Ashby arrived on the scene, grabbed him from behind, lifted him off the ground and pushed him against a fence. *Id.* ¶ 55-56. According to Heenan, Ashby warned him that he would arrest him for any further disturbance. *Id.* ¶ 57.

Over a year later, on July 30, 2005, Heenan alleges that he attempted to protest at the PPMW facility, but was confronted by "chaotic" pro-choice demonstrators who blocked his access to the sidewalk directly in front of the facility. *Id.* ¶ 62, 65-66. According to Heenan, he and his fellow pro-life demonstrators were harassed and assaulted by the pro-choice group, but the MPD officers refused to intervene. *Id.* ¶ 76.

On the basis of this alleged conduct, Heenan has brought suit pursuant to 42 U.S.C. § 1983, alleging that the MPD and the defendant officers violated his First Amendment (Counts II and III), equal protection (Count IV), and due process rights

---

[1] Heenan suggests that the conduct of the MPD officers was motivated, at least in part, by their animus to his political viewpoint. According to Heenan, Officer Ashby responded to the complaints of Heenan and his associates by saying, "I'm pro-choice, I don't want to hear it." *Id.* ¶ 47-48. Heenan alleges that Officer Ashby then approached another protestor and asked, "What if I got with your girlfriend? Then would you want to keep the baby?" *Id.* ¶ 50-51.

(Count V). Plaintiff has further alleged intentional torts by Officer Ashby (Count VI), that the MPD's failure to adequately train its officers caused his injuries (Count VII) and that the restrictive zone imposed in *United States v. Alaw*, does not restrict his ability to protest at the PPMW facility (Count I).  Defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that the MPD is *non sui juris* and that Heenan has failed to show that the individual defendants violated his constitutional rights.

## II. ANALYSIS

A court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted if it appears, assuming the alleged facts to be true and drawing upon all inferences in the plaintiff's favor, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In ruling on a motion to dismiss, the Court will liberally construe the plaintiff's complaint, but will not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

### A. CLAIMS AGAINST THE MPD

Although plaintiff has named the MPD as a defendant, it is well settled that the MPD is *non sui juris* and, therefore, cannot sue or be sued. *McRae v. Olive,* 368 F.Supp.2d 91, 94 (D.D.C. 2005); *Robinson v. District of Columbia,* 2005 WL 491467

3

(D.D.C. March 2, 2005); *Ray v. District of Columbia*, 535 A.2d 868, 869 n. 2 (D.C.1987). Accordingly, defendant's motion to dismiss the plaintiff's claims against the MPD will be GRANTED.

## B. CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### 1. The *Alaw* Injunction

In Count I of the Amended Complaint, Heenan alleges that the defendant officers barred him from protesting within 20 feet of the PPMW facility based on their erroneous interpretation of the injunction issued by Judge Kessler in *United States v. Alaw*, Civil Action No. 98-cv-1446. Heenan contends that he was not a party to the *Alaw* suit and that the enforcement of the injunction against him "violated [his] constitutionally protected rights. " Compl. ¶ 86.

Assuming, however, that the *Alaw* injunction does not apply to Heenan, there is no evidence that the defendant officers were acting pursuant to that injunction when they ordered Heenan out of the immediate vicinity of the PPMW facility. Instead, the facts alleged in the Amended Complaint suggest that the defendant officers were responding to Heenan's attempts to cross the line of PPMW escorts outside of the facility and the alleged assault of Heenan by a PPMW employee. Accordingly, the Court will GRANT defendants' motion to dismiss Count I of the Amended Complaint as to the individual defendants.

## 2. First Amendment Claims

In Counts II and III of the Amended Complaint, Heenan alleges that the defendant officers violated his First Amendment rights when Officer Ashby assaulted him and when Ashby and the other officers: 1) failed to arrest Harry James; 2) barred him from protesting within 20 feet of the facility; and 3) failed to control pro-choice demonstrators. Defendants have moved to dismiss Heenan's claims arguing that the facts do not support plaintiff's claims of a First Amendment violation. The Court agrees.

First, Heenan has alleged that the MPD officers failed to "enforce laws designed to protect his physical safety" when they failed to take action against the PPMW employee who allegedly assaulted him. Plaintiff concedes, however, that the defendant officers filed a complaint against Mr. James after the alleged assault. Although the MPD officers declined to arrest Mr. James, the discretion to arrest or decline to arrest a suspect is firmly vested in the individual officer on the scene. *See Morgan v. District of Columbia,* 468 A.2d 1306 (D.C. 1983). Moreover, our Circuit has held that absent a "special relationship" between the police officer and the citizen (one different from that existing between police and citizens generally), no particularized "duty to protect" a citizen renders an officer liable for his failure to take a certain action. *Martin v. Malhoyt,* 830 F.2d 237, 259 (D.C. Cir. 1987); *Morgan,* 468 A.2d 1306. Accordingly, the defendant officers' refusal to arrest Mr. James does not constitute a violation of Heenan's First Amendment rights.

Second, Heenan alleges that his rights were infringed when the defendant officers barred him from protesting within 20 feet of the PPMW facility. Likewise, this restriction does not rise to the level of a constitutional violation.

Although a sidewalk is considered a traditional public forum, *United States v. Grace*, 461 U.S. 171, 177 (1983), the Supreme Court has held that the government may impose "regulations of the time, manner, and place of expression" on speech in public forums as long as the restrictions are content-neutral and "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 74 (1983).

Here, the Government clearly had a significant interest in controlling a potentially violent street protest (Heenan alleged that he was jostled and later assaulted when he attempted to cross the line of pro-choice protestors) as well as ensuring that patients had access to Planned Parenthood facilities. *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 372, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997), *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 770, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), *U.S. v. Alaw*, 327 F.3d 1217 (D.C. Cir. 2003). Moreover, the establishment of the 20 foot buffer zone was narrowly tailored to serve those interests. Although Heenan was barred from protesting in the immediate vicinity of the facility, the content, timing and manner of his protest was not restrained. Additionally, as Heenan was able to continue protesting, the buffer zone

clearly left Heenan ample means of continued communication. Accordingly, the Court finds that the establishment of a 20 foot buffer zone was not an unconstitutional restriction of plaintiff's First Amendment rights.

Moreover the plaintiff can not establish that the defendant officers infringed those rights when the MPD allegedly failed to control pro-choice demonstrators in July 2005. Although Heenan alleges that MPD was present at the protest, he does not allege that Officer Ashby, Leo or Lawrence were on the scene. As a result, Heenan cannot claim that the defendant officers' conduct somehow infringed his constitutional rights.

Finally, Heenan has asserted that Officer Ashby violated his First Amendment rights when he assaulted him on May 15, 2004. Although Officer Ashby's conduct, if true, might possibly constitute an assault, plaintiff has not alleged that this conduct significantly interfered with his protest outside of the PPMW facility. Heenan has not alleged that he left the protest after the alleged assault, nor that he curtailed his later protests. Indeed, Heenan claims that he continued to protest outside of the PPMW facility at least until the time he filed his Amended Complaint in 2005. Compl. ¶ 13. Accordingly, Officer Ashby's alleged conduct does not support plaintiff's First Amendment claims.

Therefore, upon review of the facts alleged in the Amended Complaint, the Court finds that plaintiff has failed to establish that the defendant officers violated his First Amendment rights. Accordingly, defendants' motion to dismiss Counts II and III of the

Amended Complaint as to the defendant officers will be GRANTED.

### 3. Equal Protection Claim

In Count IV of the Amended Complaint, Heenan alleges that the actions of the defendant officers (detailed above) "placed an undue burden on [him] and his associates and violated their constitutional right of equal protection." Compl. ¶ 104. Although his claim is somewhat unclear, Heenan appears to be claiming that he was discriminated against on the basis of his status as a pro-life demonstrator. There is nothing in the Amended Complaint however, to support plaintiff's contention.

To the contrary, there is no basis to believe that Heenan was classified on the basis of his status as a pro-life demonstrator. Indeed, it seems far more likely that the buffer zone that was established by the officers was a means to protect public safety rather than as a mechanism for disrupting Heenan's protest. Although Heenan points to Officer Ashby's derogatory comments as evidence that he was discriminated against because he was a pro-life demonstrator, Officers Leo and Lawrence ordered Heenan away from the facility before Officer Ashby arrived on the scene.[2]

---

[2] Even assuming, *arguendo*, that the defendants' conduct had the effect of classifying Heenan on the basis of his viewpoint, the Court finds that the restrictions imposed were narrowly tailored to serve a compelling Government interest. As noted above, the Government has a strong interest in protecting public safety and in ensuring that patients have access to health facilities. Furthermore, the MPD did not restrict the time, manner or content of plaintiff's protest and the restrictions put in place were apparently only a temporary measure. Accordingly, even assuming strict scrutiny review, plaintiff has failed to state a claim for violation of his equal protection rights.

### 4. Due Process Claims

Heenan has also alleged that the defendant officers violated his due process rights when they deprived him of his "constitutional right to not be denied his freedom to engage in constitutionally protected expressive activities on public sidewalks within 20 feet of the facility" (Count V). Compl. ¶ 120.[3] Although presented as a due process violation, Count V appears to be nothing more than a reiteration of plaintiff's First Amendment claims.

The Supreme Court has held that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273 (1994). Accordingly, as the Court has found that the defendant officers' conduct does not constitute a First Amendment violation, the Court likewise finds that that conduct does not offend the Due Process Clause. Accordingly, the Court will GRANT defendants' motion to dismiss Count V.

### 5. Common Law Claims Against Officer Ashby

Finally, in addition to his constitutional claims, plaintiff has sued Officer Ashby for common-law claims of assault, battery and intentional infliction of emotional distress

---

[3] Plaintiff also seems to allege that the defendant officers violated his due process rights by enforcing the *Alaw* injunction against him. As noted above, however, there is no evidence that the defendant officers were enforcing the *Alaw* injunction against him when the ordered him to remain at least 20 feet away from the PPMW facility.

for his conduct at the May 15, 2004 protest. Amend. Compl. ¶ 124-130. Although these claims are state law claims, a federal district court may exercise supplemental jurisdiction over such claims if they are "so related to the claims in the action with such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The decision to exercise supplemental jurisdiction, however, is discretionary. *Shekoyan v. Sibley Int'l*, 366 U.S. App. D.C. 144, 409 F.3d 414, 423 (D.C. Cir. 2005), *cert. denied*, 546 U.S. 1173, 126 S.Ct. 1337, 164 L.Ed.2d 53 (citing *United Mine Workers Ass'n v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Moreover, under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over [a claim that forms part of the same case or controversy] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Gaubert v. Gray*, 747 F.Supp. 40 (D.D.C. 1990).

Here, plaintiff's constitutional claims will be dismissed and the amount in controversy is insufficient for the Court to exercise diversity jurisdiction. However, the Court is mindful that due to statute of limitation considerations, dismissal of plaintiff's common-law claims in this Court will likely foreclose his ability to pursue these claims at all. Accordingly, although judicial economy and considerations of comity might ordinarily militate in favor of dismissing plaintiff's common-law claims, the Court will DENY defendants' motion to dismiss these claims at this time.

## III. CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' motion to dismiss Counts I, II, III, IV, V and VII, but DENY plaintiff's motion to dismiss Count VI.

---
RICHARD J. LEON
United States District Judge